*State of Maryland v. Stanley Goldberg, et al.*, No. 8, September Term, 2013

CONSTITUTIONAL LAW – DUE PROCESS & TAKINGS – VESTED RIGHTS – GROUND RENTS: Legislation that replaced retrospectively ejectment with a lien-and-foreclosure process applicable to defaulting lessees of ground leases extinguished the right of re-entry, a part of the previously created bundle of vested rights in ground rent holders. By abrogating a vested right, the legislation violates the due process provision of Maryland's Declaration of Rights and the takings provision of Maryland's Constitution.

IN THE COURT OF APPEALS

OF MARYLAND

No. 8

September Term, 2013

_____

STATE OF MARYLAND

v.

STANLEY GOLDBERG, ET AL.

_____

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
Watts,
Cathell, Dale R. (Retired,
          Specially assigned),

JJ.

_____

Opinion by Harrell, J.
Adkins and Watts, JJ., dissent

_____

Filed: February 26, 2014

In this case, a re-match of sorts[1] between the General Assembly and certain Baltimore landlords, we revisit the nature of Maryland's "ground lease" system. A group of plaintiffs-lessors holding ground leases brought this action against the State challenging, on Maryland Constitutional grounds, Chapter 286 of the Laws of Maryland, which 2007 legislation replaced ejectment with a lien-and-foreclosure process for defaulting lessees of ground leases when more than six months of rent is overdue. The Circuit Court for Anne Arundel County determined that the Legislature exceeded its powers and held Ch. 286 of the 2007 Laws of Maryland invalid as an abrogation of vested rights. The State appealed this decision, arguing that the Legislature is allowed to alter remedies by statute and that no vested property rights are implicated. Before the Court of Special Appeals could decide the appeal,[2] we granted *certiorari* to determine if the General Assembly indeed has authority to invalidate the ejectment clauses[3] present in extant ground leases.

---

[1] Chapter 290 of the Laws of 2007 was the centerpiece of our decision in *Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 30 A.3d 962 (2011). Chapter 286 of the Laws of 2007, another enactment regarding the ground rent system from the same legislative session from which Chapter 290 emerged, is the focus of this follow-on litigation.

[2] We exercised our by-pass jurisdiction, pursuant to § 12-203 of the Courts and Judicial Proceedings Article of the Maryland Code (1973, 2013 Repl. Vol.).

[3] The clauses at issue are sometimes referred to as "forfeiture clauses."

# I. Facts and Legal Background

The ground lease is a centuries-old home financing tool found almost exclusively in Maryland. *See Banks v. Haskie*, 45 Md. 207, 218 (1876). With roots in feudal England, the ground lease, although little known elsewhere in the United States, is common in Maryland. *See* Lewis Mayer, *Ground Rents in Maryland* 43 (Cushings & Bailey ed., 1883). Although ground leases have changed little over the centuries, recent legislation attempted "reforms" of the ground lease system. In late 2006, *The Baltimore Sun* published a three-part investigation into the ground rent system. Fred Schulte & June Arney, *Part 1 of 3: On Shaky Ground*, The Baltimore Sun, Dec. 10, 2006, http://www.baltimoresun.com/business/bal-te.bz.groundrent10dec10,0,5955952.story (last retrieved Nov. 13, 2013). Focusing on some anecdotal reports of tenants being ousted from their homes due to missed payments totaling far less than the value of the home, these articles led to a legislative attempt during the 2007 session of the General Assembly to address perceived abuses of the ground lease system. Appellees, a class representing ground lease holders,[4] claim that the Legislature abrogated impermissibly their vested rights. Appellant, the State, counters that the legislation at issue is simply a substitution of remedies aimed at curtailing reported abuses of tenants by ground lease holders.

---

[4] We shall hereinafter sometimes refer to Appellees as "the Class."

As noted earlier, the legislation at issue here is Chapter 286 of the 2007 Session Laws of Maryland, which revised Section 8-402.2 of the Real Property Article ("RP"[5]). Md. Code (1974, 2010 Repl. Vol.), § 8-402.2 of the Real Property Article. Appellees challenged three aspects of Chapter 286. The first challenge is to Chapter 286's revision of RP § 8-402.2(a)(2) to prohibit ejectment proceedings for residential ground leases with four or fewer units.[6] Second, Appellees challenged Chapter 286's enactment of RP § 8-402.3, establishing a lien-and-foreclosure process available for ground lease holders whose tenants owe at least six months' rent.[7] Finally, Appellees challenged Chapter 286's institution of RP §§ 8-402.3(j)(3)(ii)-(k)(1)(ii), limiting the amount of attorney's fees that would be available as part of a judgment.

Appellees, 49 individual plaintiffs ("the Class"), filed suit against the State on 1 November 2007 in the Circuit Court for Anne Arundel County.[8] In their suit, the Class claimed that by replacing ejectment with the lien-and-foreclosure procedure, the State

---

[5] When referring to previous iterations of the Maryland Code, we will use the long-form citation with reference to the relevant year.

[6] "Ejectment" is a process that allows a landlord (in this case the ground lease holder) to re-enter the property after a tenant's default, and retake possession, ejecting the tenant. *See* RP § 8-402.2(a) (discussed in more depth *infra*).

[7] We explain in depth the lien-and-foreclosure process created by Chapter 286 *infra*. Shortly put, this process replaced ejectment with a lien-and-foreclosure sale. The lien receives priority from the date the ground lease was created. The debt is paid from the proceeds of the sale. If the ground lease is redeemable, the redemption amount is deducted also from the proceeds of the sale. If the ground lease is irredeemable, the foreclosure buyer takes subject to the ground lease. RP § 8-402.3(d).

[8] The Circuit Court certified later this case as a class-action.

abrogated unconstitutionally a vested property right. In addition to seeking declaratory relief, the Class sought $114 million in damages they claim were caused by the State's enactment of Chapter 286. Both sides moved for summary judgment. After we issued our opinion in *Muskin v. State Dep't of Assessment & Taxation*, 422 Md. 544, 30 A.3d 962 (2011), the Circuit Court heard the cross-motions for summary judgment, granted the Class' motion for partial summary judgment on their constitutional and damages claims, and dismissed the remaining claims as moot. On 11 April 2012, the court entered the judgment as final.

The Circuit Court began its analysis with the Maryland Constitution's prohibition against the Legislature enacting any law "authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation." Md. Const. art. III, § 40. In considering the constitutional implications, the Circuit Court addressed two questions in its ruling: the first is the threshold question of whether a ground lease holder's action for ejectment constitutes a vested right or a remedy; the second is the ultimate question of whether Chapter 286 constitutes an unconstitutional taking through abrogation of vested property rights. In answering the threshold question, the Circuit Court interpreted our decision in *Muskin* to hold that the bundle of vested rights that make up ground leases includes the vested right of re-entry upon default. Because it interpreted *Muskin* as holding that the right to re-enter in the event of default is a vested property right, the Circuit Court held that Chapter 286 operates as an unconstitutional taking of the ground lease holder's property.

We granted *certiorari* to consider the following question:

> Is legislation substituting one remedy for failure of a ground lease tenant to pay rent (lien and foreclosure) for another (ejectment) a permissible alteration of remedies that does not impermissibly abrogate vested rights of ground lease owners?

We shall affirm the Circuit Court's judgment.

## II. Discussion

Because the Circuit Court's grant of partial summary judgment rested purely on questions of law in this case, we review the judgment without deference to the trial court. *Conaway v. Deane*, 401 Md. 219, 243, 932 A.2d 571, 584 (2007) (citing *Livesay v. Baltimore*, 384 Md. 1, 9, 862 A.2d 33, 38 (2004)).

The State argues that Chapter 286 replaced merely one remedy ("re-entry through ejectment") with another (lien-and-foreclosure). It relies therefore on our longstanding rule that legislation altering remedies does not offend the Maryland Constitution and concludes that this law is constitutional. The State avers that, because Chapter 286 does not inhibit a ground lease holder's ability to collect rents or abridge the lease owner's reversionary interest in the property, it neither impairs the underlying contract nor abrogates a vested right. In the State's view, the Circuit Court misinterpreted *Muskin* as foreclosing the possibility of legislative alteration of remedies concerning ground leases at all. Rather, it says *Muskin* was decided as it was because Chapter 290 represented a complete extinguishment of existing ground leases and cut off all remedies available to a ground lease holder. Under the State's theory, because Chapter 286 does not cut off all remedies and does not extinguish ground leases, it should be held valid.

The Class counters that because Muskin holds explicitly that the right to re-enter in the event of default is a vested right, *Muskin* renders the present one a simple case. It points out that, in *Muskin*, we explained that the Maryland Declaration of Rights and Constitution prohibit the retrospective abrogation of vested rights. *Muskin*, 422 Md. at 555, 30 A.3d at 968 ("Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights") (citing *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 630 n.9, 805 A.2d 1061, 1076 n.9 (2002)). Because the right to re-enter and take possession of their properties in the event of default is a vested right, the Class urges, the Legislature cannot abrogate those rights under the guise of altering a remedy. The Class draws thus a meaningful distinction between the remedy of foreclosure and the right of re-entry by summary ejectment in the event of default.

The Class does not contest the ability of the Legislature to alter remedies. Rather, the Class contends, by cutting off the right of re-entry, the Legislature impaired a critical and vested right of the ground lease holder. In its view, because the statute's system of lien-and-foreclosure can never provide ground lease holders with possession of the property for which they hold legal title, it abrogates their vested property rights.

## A. History of Ground Rents in Maryland

Leases for ground rents have been present in Maryland since Colonial times. *Banks*, 45 Md. at 218. Like any lease, they are intended to benefit mutually the lessor and lessee. *Id*. at 217. The lessee enters into the agreement to "acquire a perpetual interest in the leased premises, which would justify his making permanent improvements

thereon, and enable him to avail himself of the value of the property thus enhanced . . . ." *Id*. The lessor enters into the agreement, among other reasons, "to secure the prompt payment in perpetuity of the interest on a sum of money, equivalent to the value of the property . . . ." *Id*. Ground leases have also been traded commodities since at least the Nineteenth Century. *Id.* People seeking safe investments would purchase them from ground lease holders as an income stream. *Id*. Additionally, because often the property increased in value with the development of the surrounding area, lessees would sell their rights to possess the land. *Id*.

The language of ground rent leases has changed little since 1750. Frank A. Kaufman, *The Maryland Ground Rent–Mysterious but Beneficial*, 5 Md. L. Rev. 1, 15 (1940). In a ground lease, "the lessor grants to the lessee, his executors, administrators, and assigns a specifically described lot along with the improvements on that lot and all rights and appurtenances connected with it for a term of ninety-nine years." *Id*. "The lessee covenants in return for himself, his executors, administrators, and assigns to pay a specified yearly rental during the running of the lease in equal semi-annual installments and also agrees to pay all the taxes and assessments on the leased property." *Id*. The lessee and his assigns are given the valuable option to renew the lease at any point during the ninety-nine year term. *Id*. at 16.

Ground leases are either redeemable or irredeemable. A redeemable ground lease grants the tenant the absolute right to tender an amount of cash to the ground lease holder that extinguishes the ground lease and vests a fee simple absolute in the tenant. Mayer, *supra*, at 120. Sections 8-110 and 8-110.1 of the Real Property Article govern the

- 7 -

process by which a ground lease tenant may redeem the ground lease.[9]  If the ground

lease was created after 8 April 1884, a ground lease tenant has an absolute right to

redeem the ground lease that the ground lease holder cannot abrogate or resist.  Kaufman,

*supra*, at 20 (citing Md. Code (1939) Art 21, Secs. 110, 111); *see Brager v. Bigham*, 127

Md. 148, 160, 96 A. 277, 280-81 (1915) (holding that the right of redemption is read into

a ground lease, and no covenant in the lease can estop the lessee from exercising the right

to redeem the ground lease).  An irredeemable ground lease, on the other hand, is a

ground lease that does not contain a provision allowing the leaseholder tenant to redeem

the ground lease.  RP § 8-110.1(a)(5).  As indicated above, all such ground leases must

have been created prior to 9 April 1884.  *Id.*

The lease specifies typically what action the lessor may pursue in court if the

lessee is late paying rent.  Traditionally this relief included: (1) to make distress on the

---

[9] The Code specifies how much the tenant must pay to redeem the ground lease and convert their interest into a fee simple absolute:

> (2)  The reversion is redeemable:
> (i)   For a sum equal to the annual rent reserved multiplied by:
> > 1.  25, which is capitalization at 4 percent, if the lease was executed from April 8, 1884 to April 5, 1888, both inclusive;
> > 2.  8.33, which is capitalization at 12 percent, if the lease was or is created after July 1, 1982; or
> > 3.  16.66, which is capitalization at 6 percent, if the lease was created at any other time;
> (ii)  For a lesser sum if specified in the lease; or
> (iii)  For a sum to which the parties may agree at the time of redemption.

RP § 8-110(b)(2) (1974, 2010 Repl. Vol.).

arrearage; (2) after 60 days of nonpayment, to take over the premises by re-entry and hold them until the arrearage is paid up; and (3) after six months of nonpayment, re-enter the premises and possess them as if the lease had never been made. *See* Kaufman, *supra*, at 15–16; *see also* Mayer, *supra*, at 51–53. The right of re-entry is inserted into the ground lease principally as security for the payment of rents. Before the Legislature passed Chapter 286, RP § 8-402.2(a) afforded the leaseholder the opportunity to pursue ejectment, which allowed it to re-enter and take possession of the property. Md. Code (1974, 2003 Repl. Vol.), § 8-402.2(a) of the Real Property Article. The pre-2007 Code provided:

> Whenever, in a case that involves a 99-year ground lease renewable forever, at least 6 months ground rent is in arrears and the landlord has the lawful right to reenter for the nonpayment of the rent, the landlord, no less than 30 days after sending to the tenant by certified mail, return receipt requested, at the tenant's last known address a bill for the ground rent due, may bring an action for possession of the property under § 14-108.1 of this article[.]

Md. Code (1974, 2003 Repl. Vol.) § 8-402.2(a) of the Real Property Article. Thus, under a ground lease, the landlord could gain possession of the property rather directly: by giving notice, waiting 30 days, and bringing an action for possession under RP § 14-108.1.[10] If the landlord complies then with the provisions of § 8-402.3, it could hold the property free and clear of the tenant's interest after six months. As § 8-402.2(b)(2) of the Real Property Article provided before 2007, the property would be:

---

[10] Notice was required not only to the tenant, but also to each mortgagee of the lease who recorded in the land records a request for notice of judgment. RP § 8-402.2(b).

> discharged from the lease and the rights of all persons claiming under the lease are foreclosed unless, within 6 calendar months after execution of the judgment for possession, the tenant or any other person claiming under the lease: (i) Pays the ground rent, arrears, and all costs awarded against that person; and (ii) Commences a proceeding to obtain relief from the judgment.

Md. Code (1974, 2003 Repl. Vol.) § 8-402.2(b)(2) of the Real Property Article.[11] Expiration of six months without payment and legal action by the tenant or his assignee completed the ejectment process.

Under the challenged 2007 law (Chapter 286), the ejectment provision set forth immediately above "does not apply to residential property that is . . . used . . . for four or fewer dwelling units." So, in 2007 these residential ground lease holders lost the right to re-enter on default and obtain discharge of tenants' and mortgagees' rights. Rather, under the new law set forth in RP § 8-402.3(d), the landlord was given a right to a lien against the real property on default, if the ground rent is unpaid six months after its due date. This lien "has priority from the date the ground lease was created." RP § 8-402.3(l)(2). If the ground rent remains unpaid, the ground lease holder may foreclose on the lien, and have their debt paid from the proceeds of the sale. RP § 8-402.3(n).[12] If the ground lease is redeemable, the ground lease holder receives also the redemption amount

---

[11] If at any point during the action, the tenant paid the back rent, the action terminated. Md. Code (1974, 2003 Repl. Vol.) § 8-402.2(d) of the Real Property Article.

[12] The foreclosure occurs "in the same manner and subject to the same requirements as the foreclosure of a mortgage or deed of trust containing neither a power of sale nor an assent to decree." RP § 8-402.4(n).

from the proceeds of the foreclosure sale, and the foreclosure sale buyer takes title free of the ground lease. RP § 8-402.3(n)(3)(i). If the ground lease is irredeemable, however, the foreclosure buyer takes subject to the ground lease. RP § 8-402.3(n)(3)(ii).

## B. Arguments by the Class

To reiterate, the Class makes three arguments for the invalidity of Chapter 286. These arguments are: (1) *Muskin* made the right to re-enter in the event of default a vested property right; (2) the right of re-entry in the event of default is a right distinct from the remedy of ejectment; and (3) Chapter 286 transfers ground lease holders' property without just compensation.

## C. *Muskin* Governs the Outcome

Put simply, the hash of the present case was settled effectively by the Court's opinion in *Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 30 A.3d 962 (2011). "Together, Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights." *Id.* at 555, 30 A.3d at 968 (citing *Dua*, 370 Md. at 630 n.9, 805 A.2d at 1076 n.9). "It is only in times of revolution that, by a stroke of the pen, vested rights founded upon contract have been annihilated." Mayer, *supra*, at 128.

In *Muskin*, we reiterated the well-settled principle that "Article 24 of the Maryland Declaration of Rights, guaranteeing due process of law, and Article III, § 40 of the Maryland Constitution, prohibiting governmental taking of property without just compensation, have been shown, through a long line of Maryland cases, to prohibit the retrospective reach of statutes that would result in the taking of vested property rights."

*Muskin*, 422 Md. at 555-56, 30 A.3d at 968 (footnote omitted) (citing *Dua*, 370 Md. at 604, 805 A.2d at 1061). We said there, as well as in *Dua*, that

> "[i]t has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking of a person's property and giving it to someone else."

*Id.* at 556-57, 30 A.3d at 969 (alteration in original) (quoting *Dua*, 370 Md. at 623, 805 A.2d at 1072).[13]

Thus, as we did in *Muskin*, "[t]o determine whether [the challenged statute (Chapter 286 in this case)] is constitutional under Maryland law, we evaluate whether the statute purports to apply retrospectively and abrogates a vested right or takes property without just compensation." *Id.* at 557, 30 A.3d at 969. "If a retrospectively-applied statute is found to abrogate vested rights or takes property without just compensation, it is irrelevant whether the reason for enacting the statute, its goals, or its regulatory scheme is

---

[13] This Court explained in *Muskin* that

> [s]tatutes have been found unconstitutional under the Maryland Declaration of Rights and Constitution for violating due process, the takings clause, or both. We said in *Dua v. Comcast Cable of Md.*, 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002), a "statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authorize private property, to be taken . . . , without just compensation' (Article III, § 40). Concomitantly, such a statute results in a person or entity being 'deprived of his . . . property' contrary to 'the law of the land' (Article 24)."

*Muskin*, 422 Md. at 557 n.8, 30 A.3d at 969 n.8.

'rational.'" *Id.* (citing *Dua*, 370 Md. at 623, 805 A.2d at 1072). "[T]he relevant standard for determining whether a retrospective statute is constitutional is 'whether the vested rights are impaired and *not* whether the statute has a rational basis.'" *Id.* (quoting *Dua*, 370 Md. at 623, 805 A.2d at 1072).

### i. Chapter 286 Operates Retrospectively.

As we stated in *Muskin*, "[r]etrospective statutes are those 'acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act.'" *Muskin*, 422 Md. at 557, 30 A.3d at 969 (citing *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389, 394 (2000)). Generally, retrospective statutes that abrogate vested rights are unconstitutional. *Id.* Although "there is no bright line rule for determining what constitutes retrospective application, . . . retrospective statutes are those that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 557-58, 30 A.3d at 969 (quoting *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 147, 957 A.2d 595, 599 (2008)). In determining whether a statute acts retrospectively, we evaluate "'fair notice, reasonable reliance, and settled expectations' to determine 'the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.'" *Id.* at 558, 30 A.3d at 970 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.E.2d 229, 255 (1994)). *See also John Deere*, 406 Md. at 147-48, 957 A.2d at 599-600 (adopting the Supreme Court's *Landgraf* factors analysis for retrospectivity analysis in this State).

Applying the *Landgraf* model to the present case, as we did in *Muskin*, fair notice is not satisfied by the provisions of Chapter 286. Chapter 286 was passed on 2 April 2007, and made effective three months later on 1 July 2007. Thus, if a tenant defaulted prior to the enactment of Chapter 286, but the ground lease owner had not acted upon his/her/its accrued right to re-enter (i.e. had not begun yet the process for ejectment), the ground lease holder's present right to seek a judicial remedy is eliminated by Chapter 286 in but three months.

Moreover, Chapter 286 impacts severely the reasonable reliance and settled expectations of ground rent owners by virtue of its extinguishment of the right of reentry and destruction of the reversionary interest. As this Court stated in *Muskin*, the settled expectations of ground rent owners does not lie solely in future rents, but rather "[g]round rent owners rely reasonably on the future income from ground rents *or the ability to sell the fee simple interest on the open market or in the future, if necessary*." *Muskin*, 422 Md. at 558, 30 A.3d at 970 (emphasis added). "[A] ground rent holder's *fee simple interest remained . . . as settled an expectation as any fee simple owner's interest in real property*." *Id.* (emphasis added) (citing *Heritage Realty, Inc. v. Mayor of Baltimore*, 252 Md. 1, 248 A.2d 898 (1969)). "The terms of the ground rent lease are fixed over the 99 year lease period and *the conditions that create a reversionary interest in the property are predetermined*." *Id.* (emphasis added). Just as the Court found in *Muskin*, prior to adoption of Chapter 286, "owners of ground rent properties had no reason to believe that their interests were anything but well-settled, and had a reasonable

basis to rely on the continuation of the state of the law permitting ground rent leases to continue." *Id.*

As established further in *Muskin*, "[g]round rent leases, established through transactions consummated many years ago, create rights and obligations for ground rent owners and leaseholders." *Muskin*, 422 Md. at 559, 30 A.3d at 970. One of these rights for the ground rent owners is the right to re-entry in the event of default, which Chapter 286 extinguishes for all intents and purposes. Thus, Chapter 286 acts retrospectively to impair a strand of the ground lease holder's bundle of rights, namely its right to reentry in the event of default. The remaining question is whether this right is a vested one.

### ii.     The Inseparable Bundle of Vested Rights in Maryland Ground Rent Leases.

To determine whether a right is vested, we analyze the nature of the right implicated by the challenged statute. We explained the proper framework for this analysis regarding the ground leaseholder's rights in a ground rent lease most recently in *Muskin*. When analyzing the implicated rights under the proper framework for ground rent leases (*i.e.*, the bundle of vested rights that is the essence of these leases), the ground leaseholder's right of reentry must be viewed as an inextricable part of the bundle of vested rights which the Legislature may not abolish retrospectively. Because Chapter 286 destroys the ground leaseholder's right of reentry, we conclude that the statute is unconstitutional.

### (a) The Proper Framework for the Analysis of Vested Rights in Ground Rents in this State (As Settled in *Muskin*).

A ground rent lease in this State is defined as "a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment ('ground rent') and *retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay.*" *Muskin*, 422 Md. at 550, 30 A.3d at 965 (emphasis added) (citing *Kolker v. Biggs*, 203 Md. 137, 141, 99 A.2d 743, 745 (1953)). In *Muskin*, we provided, in clear and definite terms, the proper framework for vested rights analysis of the rights in these transactions. There, this Court stated that "[a] ground rent lease creates a *bundle of vested rights* for the ground rent owner, a contractual right to receive ground rent payments *and the reversionary interest to re-enter the property in the event of a default* or if the leaseholder fails to renew." *Id.* at 559, 30 A.3d at 971 (emphasis added). The *Muskin* Court explained specifically that "[t]hese two rights *cannot be separated* one from the other; *together they are the essence of this unique property interest*, and as such, *vested rights analysis must consider them together.*" *Id.* (emphasis added).

Because the right to re-enter the property in the event of default is included in this bundle (as part of the lessor's reversionary interest), this clear language directs how this Court should analyze the present case. Although *Muskin* determined that a failure to meet Chapter 290's registration requirement could result in abrogation of the vested right to receive ground rents and the reversion at the expiration of the lease, the framework established in *Muskin*, *i.e.*, that the bundle of the ground lease holder's rights are

inseparable for purposes of the analysis of vested rights, remains true for purposes of the analysis in the present case.[14]

The facts of the present case do not excuse obeisance to the underlying purpose of the ground rent nor the proper analytical framework for vested rights in a ground rent lease situation. The underlying purpose of the ground rent, from the viewpoint of the ground rent leaseholder, never has been limited exclusively to securing the payment, in perpetuity, of rent. The origins of the ground lease system in this State stemmed from the idea that "[t]here was thus a speculation in these peculiar leases, which, no doubt, added zest to the bargain on both sides."[15] Mayer, *supra*, at 45. The main objects of the lessor in making a ground lease are "[1] the inducement thereby offered to improvement, and [2] the security and receipt of a clear annual rent and the fine for renewal . . . , [3] based upon the full recognition of the reversionary estate in the lessor and those who may claim under him . . . ." *Id.* at 87. Maryland lawyers at that time considered "[t]he common law lease, in which the reversion remained in the landowner *and his tenure of the proprietary was not interfered with* . . . as the form best adapted to accomplish their purpose." *Id.* at

_____

[14] In *Muskin*, we noted that "[e]ven if [the rights in the ground lease] were analyzed separately, to determine one right is vested is to find Chapter 290's extinguishment scheme flawed fatally." *Muskin*, 422 Md. at 560 n.9, 30 A.3d at 971 n.9. That statement was provided in a footnote as an alternative to support the ultimate conclusion in that case. The statement does not negate the basis of the analysis which is supported by the historical development of the ground rent system in this State and which demands that the bundle of vested rights for the ground rent owner, provided by a ground rent lease, "*cannot be separated one from the other*." *Id.* at 559, 30 A.3d at 971 (emphasis added).

[15] Although this exact quotation refers to perpetual leases in Ireland, this same notion rings true as well for the origins of Maryland ground rent leases.

46-47 (emphasis added). "In fact, it is a question whether the landed proprietors could have secured their object in any other way." *Id.* at 47.

Because the Bar at the time of the origin of the Maryland ground lease system established that the "common law lease, in which the reversion remained in the landowner and his tenure of the proprietary was not interfered with" was the best way to accomplish their purpose, it was established firmly that the reversionary interest was intertwined with the rent owed. *See id.* at 62 ("The rent reserved on a term is always incident to the reversion and follows it, as an incident follows its principal."). "The reversion being in fee simple, to its incident the rent, are consequently attached all the qualities of fee simple property." *Id.* Accordingly, "[i]t follows that the estate of the lessor is subject exclusively to the law that governs the realty. The rent passes with the reversion by descent to the lessor's heirs at law, or goes to his devisees." *Id.* at 63. Similarly, the right of re-entry passes by descent to the lessor's heirs at law, or goes to the devisees as well. This intertwined nature of the lessor's rights (collectively, "the reversionary interest")[16] is the essence of the ground lease system. *See id.*

---

[16] The State interprets our *Muskin* decision as setting forth two rights in the bundle of vested rights: (1) the reversionary interest (which, under the State's view, means solely a reversion), and (2) the right to receive rent payments. This contention misinterprets *Muskin* and the common understanding of "reversionary interest." In *Muskin*, we used the term "reversionary interest" as collectively referring to two distinct, intertwined rights (the reversion and the right to re-entry). *Muskin*, 422 Md. at 559, 30 A.3d at 971 ("A ground rent lease creates a bundle of vested rights for the ground rent owner, [1] a contractual right to receive ground rent payments and [2] *the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew*.") (emphasis added). Moreover, the definition of a "reversionary interest" is not limited to a "reversion," but rather a reversion is a type of a reversionary interest.

- 18 -

Accordingly, considering a ground lease, we review the estate of the lessor as a unitary object because of the strength of the interconnection between the rents and the reversionary interests (the reversion and the right to re-entry). To sever the bundle of the lessor's rights into pieces ignores the very nature of the ground lease system in this State.

### (b) The Proper Vested Rights Analysis

The special interest at the heart of this case is the right to re-enter and take possession in the event of default (which is one of the two rights bundled as the lessor's reversionary interest in the Maryland ground rent). The State contends, however, that no right is lost because ejectment and re-entry are merely remedies to enforce rent payments and the landlord's reversionary interest remains intact in the replacement of these remedies with the foreclosure-and-lien remedy in Chapter 286. We disagree with much of the State's arguments regarding the nature of the implicated right in the context of the ground lease system in this State. Particularly, we disagree with labeling the right of reentry as a remedy that the Legislature may switch-out in a ground lease, and with the State's conclusion that the right is not vested, despite being part of the bundle of rights essential to the nature of these leases.

Understanding the nature of a "right of entry" can be confusing; thus, we pause to review the nature of this strand of the helix that is the bundle of rights. *See* 1 John A. Borron, *Simes & Smith, The Law of Future Interests* 267 n.1 (Borron ed., 3d ed. 2002) ("Confusion of terminology is rampant in this area of the law [concerning the "right of entry subject to condition broken" and the "possibility of reverter"] and great care must be exercised in dealing with judicial utterances in which distinctions are obliterated by

careless use of words."). Although some treatises may use "possibility of reverter" as a synonym for a "right of entry," the appellate courts in this State have taken care to distinguish these rights due to the differing legal distinctions and consequences flowing from their effects. *See, e.g.*, *Arthur E. Selnick Assocs., Inc. v. Howard Cnty. Md.*, 206 Md. App. 667, 695-96, 51 A.3d 76, 93, *cert. denied*, 429 Md. 529, 56 A.3d 1241 (2012).

The significance of the distinction is in the legal consequences of the rights.

> [T]he right of entry is frequently called a "possibility of reverter" even by courts which discriminate carefully between the legal consequences of the true possibility of a reverter (an interest which automatically revests in possession) and the right of entry (which becomes possessory only after an election). Of course, confusion is inevitable when a court refuses to recognize any distinction between the two.

Borron, *supra*, at 267 n.1 (citation omitted). *See also The Knights & Ladies of Samaria v. Bd. of Educ. of Charles Cnty.*, 113 Md. App. 656, 665 n.4, 688 A.2d 933, 937 n.4 (1997) (labeling this distinction between possibilities of reverter and rights of entry as "sharp" and "crucial"). Borron explained further:

> Strictly speaking, under the Hohfeldian terminology,[17] the interest here considered would constitute a "power" and not a

---

[17] "Hohfeldian terminology" refers to the influential contribution of Professor Wesley Newcomb Hohfeld to analytical jurisprudence in the science of law. Of importance here is Hohfeld's scheme in which "he set forth eight fundamental conceptions in terms of which he believed all legal problems could be stated." Walter Wheeler Cook, *Introduction* to Wesley Newcomb Hohfeld, *Fundamental Legal Conceptions As Applied in Judicial Reasoning and Other Legal Essays*, at 5 (Walter Wheeler Cook, ed., Yale University Press 1919). He arranges them in the following scheme:

| Jural Opposites | right | privilege | power | immunity |
|---|---|---|---|---|
| | no-right | duty | disability | liability |

(Continued...)

"right," for a by right, in the strict sense, is meant a claim which may be presently enforced. Until the owner of a right of entry affirmatively elects to forfeit her breach of the condition, there is no such present right of enforcement. Thus, suppose A conveys to B in fee upon the express condition that if B or his successors should ever sell intoxicating liquor on the premises, the grantor may reenter and forfeit the estate. Even though the condition is broken, unless A elects to forfeit the estate, he cannot sue B to recover

| Jural Correlatives | right | privilege | power | immunity |
|---|---|---|---|---|
| | duty | no-right | liability | disability |

*Id.* "With the clear recognition that the same term is being used to represent four distinct legal conceptions comes the conviction that if we are to be sure of our logic we must adopt and consistently use a terminology adequate to express the distinctions involved." *Id.* at 6. According to Professor Hohfeld, "the tendency—and the fallacy—has been to treat the specific problem [of fundamental conceptions] as if it were far less complex than it really is; and this commendable effort to treat as simple that which is really complex has, it is believed, furnished a serious obstacle to the clear understanding, the orderly statement, and the correct solution of legal problems." Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L. J. 16 (1913), *reprinted in* Wesley Newcomb Hohfeld, *Fundamental Legal Conceptions As Applied in Judicial Reasoning and Other Legal Essays*, 26 (Walter Wheeler Cook, ed., Yale University Press 1919). Instead, according to Professor Hohfeld, "the right kind of simplicity can result only from more searching and more discriminating analysis." *Id.*

In the context of Maryland ground rent leases, what we refer to as a "right of re-entry" is not a "right" under Hohfeldian terminology, but rather is a "power" and a "privilege." In discussing the nature of the "*right* of entry," Professor Hohfeld explains,

in the case of a conveyance of land in fee simple subject to condition subsequent, after the condition has been performed, the original grantor is commonly said to have a "*right* of entry." If, however, the problem is analyzed, it will be seen that, as of primary importance, the grantor has two legal quantities, (1) the privilege of entering, and (2) the power, by means of such entry, to divest the estate of the grantee. The latter's estate endures, subject to the correlative liability of being divested, until such power is actually exercised.

*Id.* at 55.

possession. His election to forfeit will change his future interest to a present interest, and may fairly be regarded as the exercise of a power. Until such power is exercised, he has no technical "right". It is for this reason, primarily, that the Restatement of Property has termed the interest a "power of termination." (2 Restatement, Property (1936) § 155.)

Borron, *supra*, at 267 n.1. *See also* 16 A.L.R.2d 1246 (Originally published in 1951) ("This right of re-entry is not a reversion, a possibility of reversion, or an estate in land, but is a mere right or chose in action — a right or power to terminate the estate of the grantee and retake the same if there is a breach of condition — and if it is enforced, the grantor would be in by the failure of the condition and not by a reverter.") (citing 33 Am Jur, Life Estates, Remainders, and Reversions, §§ 204, 205, 207, 208)). Because of the important distinction in the legal consequences of these rights, we use the term "right of re-entry" here.

The State characterizes improperly the "right of re-entry" as synonymous, or closely thereto, with ejectment (labeled by the State as "re-entry through ejectment") and classifies both as remedies. Black's Dictionary defines a "remedy" as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Black's Dictionary* 1320 (8th ed. 2004). In other words, "'[a] remedy is anything a court can do for a litigant who has been wronged or is about to be wronged.'" *Id.* (quoting Douglas Laycock, *Modern American Remedies* 1 (3d ed. 2002)). The right of re-entry is not a remedy, but is understood more properly as the right to pursue a provided remedy, such as ejectment, to terminate the leasehold interest and recover rents due prior to the termination. This distinction is pivotal in a proper analysis. The State argues that the

- 22 -

substitution of the foreclosure-and-lien remedy in lieu of the "re-entry through ejectment" is constitutional because the substituted remedy achieves the same purposes as its deceased predecessor. The proper question rather is whether the foreclosure-and-lien remedy provides an adequate remedy to replace ejectment as the current remedy for a ground leaseholder to enforce the right of re-entry. If the foreclosure-and-lien remedy is not an adequate replacement, then the analysis turns on whether the right of re-entry is vested.

We conclude that the foreclosure-and-lien remedy of Chapter 286 does not provide the same safeguards for leaseholders as the prior ejectment remedy did. Under ejectment, the remedy for the right of re-entry in ground rent leases prior to 2007, the right of present possession is returned to the ground leaseholder, terminating the ground lease such that the holder owned the property in fee simple (and not subject to any lease), and provided the ground leaseholder (now owner in fee simple) the ability also to recover rents due prior to the termination of the lease. Under Chapter 286's foreclosure-and-lien remedy, the ground leaseholder is not able to seek any judicial remedy to terminate the lease such that he could regain the right to present possession of the property.

Some may argue that this "slight" distinction is tolerable because the sole purpose of the conveyance of a ground rent lease (and of the right to re-entry), from the viewpoint of the landlord, is to secure payments of rent. Admittedly, the right of re-entry is

described often as intending to secure payments of rent.[18]   Although it may serve as

security for the payment of rent, that purpose is not the only one it serves.  It serves as a

_____

[18] Such a description, however, is criticized just as often for failing to include the other important aspect of the right of re-entry.  For example, a Washington Practice of Real Estate treatise, in discussing the traditional term "right of entry," explained,

> Traditionally the right of entry has been treated as one of the reversionary future estates. However, the Restatement of Property and some writers influenced by it using the phrase "power of termination" and classified it as an "interest" rather than as a "right" or an "estate."  [*See* Restatement of Property §§ 24, 155 (1936); W. Stoebuck & D. Whitman, Law of Property, § 3.5 (3d ed. 2000); L. Simes, Future Interests (Hornbook) § 14 (2d ed. 1966.  But 1 L. Simes & A. Smith, Future Interests § 241 (2d ed. 1956), which was published after Sime's original Hornbook, uses the phrase "right of entry."] The traditional terminology will be used here, first, because most courts seem to use and act upon it. Also, if the grantor has only a power to terminate the estate he has granted, as the Restatement says, while this explains the mechanism by which that estate ends, *it does not explain how the grantor is restored to an estate*.

17 Wash. Prac., Real Estate § 1.17 (2d ed.) (emphasis added).  The treatise explained further,

> The Restatement [of Property cited above] takes the position that the "power of termination" is not a power of appointment. If it were, that would explain how the grantor could appoint an estate to himself. But if he has only a power to terminate, how does he get any estate, unless he did indeed retain an estate, which the Restatement also denies. What would a bare power to terminate produce? An escheat to the state?

*Id.* § 1.17 n.3.  The State here falls prey apparently to this misleading nature of the term "power to terminate" and "right to re-enter" in concluding that the foreclosure-and-lien remedy is an adequate replacement for the remedy of ejectment.

means of terminating the lease as well. As Professor Bordwell stated aptly in his article *Seisin and Disseisin*,

> As long, however, as right of entry remained a technical term of the land law, what gave it vitality was that it was something more than its name implied. Just as recovery in ejectment meant little unless the recoveror had some right or interest in the land which entitled him to hold the land after the recovery, so the right of entry meant little in itself. What gave it vitality was the title or interest, the right of property, back of the right to enter and which would be realized in possession by the entry. *Right of entry was therefore not properly a mere right to recover the land. It was a right to enter and to enjoy such right of property as the holder had. It was right of entry plus right of property.*

Percy Bordwell, *Seisin and Disseisin*, 34 Harv. L. Rev. 592, 609 (1921) (emphasis added) (footnotes omitted). Permitting the extinguishment of the right of re-entry changes the very essence of these transactions in this State from a lease subject to rent into a conveyance subject to rent, a label that this Court rejected previously.[19] Accordingly, the foreclosure-and-lien remedy cannot replace effectively the ejectment remedy which is essential for the right of re-entry in Maryland ground rents. Thus,

---

[19] Were we analyzing ground rent leases in Pennsylvania, we might agree more easily with the State's contention. In Pennsylvania, the ground rent lease is considered a land conveyance subject to rent payments. *See generally* Richard M. Cadwalader, *A Practical Treatise on the Law of Ground Rents in Pennsylvania* (Kay & Brothers ed., 1879). In contrast, though, in Maryland, the ground rent system is considered a lease subject to condition for rent payments. *See generally* W. Calvin Chesnut, *The Effect of Quia Emptores on Pennsylvania and Maryland Ground Rents*, 91 U. Penn. L. Rev. 137 (1942) (discussing the difference between the two States' ground rent systems). This distinction has significant effects in multiple areas of the law. *See, e.g.*, H. H. Walker Lewis, *The Taxation of Maryland Ground Rents*, 3 U. Md. L. Rev. 314, 335-36 (discussing the different effects in taxation resulting from the distinction between the Pennsylvania ground rent lease and its counterpart in Maryland).

Chapter 286 cannot survive constitutional scrutiny because the right of re-entry is vested in ground rents entered prior to its enactment.

Due to the unique nature of the property rights invested in ground rent leases,[20] where the ground leaseholder's rights are bundled, the right of re-entry is vested. In mindful ignorance of clear, strong language describing this unique property interest, the State seeks to separate the ground leaseholder's rights for purposes of its vested rights analysis and concludes that Chapter 286 does not impinge impermissibly on any vested right. It imagines that, because the right of re-entry is a remedy, it is not a vested right, and thus not subject to the heightened protections we contemplated in *Muskin* and *Dua*. This view fails, however, to recognize the unique nature of the right of re-entry in the ground rent lease system in this State as being inseparable from the vested rights of reversion and to collect rent. As discussed earlier, the right of re-entry is part of the bundle of rights, which is essential to the nature of ground rent leases. When viewing that right under the proper analytical framework, this case becomes rather

---

[20] Ground rent leases in this State are unique and so unusual (like an unattractive unicorn) that it is widely recognized that "[r]ecourse to the legal encyclopedias is almost hopeless." Lewis, *supra*, at 314. The problem with referring to generalized statements in legal encyclopedias for purposes of analyzing ground rent leases in this State is that "[t]he encyclopedias fail adequately to distinguish the Maryland variety of ground rents from their cousins in Pennsylvania and elsewhere and are replete with generalities and citations which prove erroneous when applied to our own local product." *Id.* at 314 n.2. Thus, rather than refer to generalized statements in legal encyclopedias, we rely on secondary sources and cases discussing this unique "mysterious being," referred to by Judge Kaufman as the "ground rent animal." Frank A. Kaufman, *The Ground Rent— Mysterious but Beneficial*, 5 U. Md. L. Rev. 1, 1, 2 (1940). *See also id.* at 72 (recognizing that the unique nature of Maryland ground rent leases stems from the fact that "the exact form of the present Maryland system 'just sort of' evolved by accident").

straightforward.  The right of re-entry is vested and, thus, Chapter 286 impinges unconstitutionally on it.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY THE STATE OF MARYLAND.**

Circuit Court for Anne Arundel County
Case No. 02-C-07-126810
Argued: September 9, 2013

IN THE COURT OF APPEALS

OF MARYLAND

No. 8

September Term, 2013

---

STATE OF MARYLAND

v.

STANLEY GOLDBERG, ET AL.

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
Watts
Cathell, Dale R. (Retired,
       Specially Assigned),

JJ.

---

Dissenting Opinion by Adkins, J.

---

Filed: February 26, 2014

I respectfully dissent because in my view the Majority erroneously confers vested status on a contingent right, leading it to grant heightened protection to the right of reentry in the event of default. By deeming that a right can be vested even though the ability to exercise that right is still subject to a condition precedent, I believe the Majority errs. Only because it views the right of reentry as a vested right does the Majority subject Chapter 286 of the 2007 Session Laws of Maryland ("Chapter 286") to the heightened scrutiny we explained in *Dua* and *Muskin*. *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 630 n.9, 805 A.2d 1061, 1076 n.9 (2002); *Muskin v. State Dep't of Assessment and Taxation*, 422 Md. 544, 30 A.3d 962 (2011). Because I do not believe that a contingent right can vest prior to its condition precedent occurring, I would hold Chapter 286 to be a constitutionally permissible substitution of remedies, well within the Legislature's authority. Additionally, I disagree with the Majority and would hold that the particular substitution of remedies enacted by Chapter 286 is sufficient to protect the ground lease holder's interests.

I do not disagree with the Majority's reminder that the Legislature may not retroactively abrogate vested rights. I dissent, nonetheless, because the right of reentry is an inchoate cause of action subject to a condition precedent. Namely, it is subject to the condition precedent of "in the event of default." No doubt the right of reentry may vest, but that does not, absent the condition precedent occurring, make it vested. Because it is not a vested right, the right of reentry in the event of default should not receive the heightened protections that we grant to vested rights. Yet in its use of *Muskin*'s "bundle" language, the Majority announces that in Maryland there are three certainties: death, taxes, and ground

lease tenants defaulting on their payments. The Majority does not explain why the Maryland ground lease, which differs from a traditional lease only in ways irrelevant to the right of reentry in the event of default,[1] exists on a lonely jurisprudential island where the term "vested" takes on a meaning recognized in no other jurisdiction in this country.

Before further analyzing the difference between something being vested and something being contingent, I want to explain the limits of our holding in *Muskin*. In *Muskin*, we held the extinguishment and transfer provisions of Chapter 290 of the 2007 Session Laws of Maryland ("Chapter 290") invalid under the Maryland Declaration of Rights and Constitution. *Muskin*, 422 Md. 544, 30 A.3d 962. We relied on *Dua*, which pronounced it "firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua*, 370 Md. at 623, 805 A.2d at 1072. Thus, what is a "vested property right" was our primary question in *Muskin*, as well as in today's case.

---

[1] What sets apart the Maryland ground lease from a traditional lease is that the arrangement allows for an enduring option to renew the lease at any point during the ninety-nine year lease term. This complicates the traditional analysis of end-of-term reversion because, unlike traditional leases devoid of a unilateral option to renew, determination of the definitive date that the possessory interest reverts to the landlord can be complicated. Yet this unilateral renewal right does not speak at all to the likelihood of default on rent payments. Thus, our analysis of the right of reentry in the event of default should not be colored by any of the idiosyncracies of this uniquely Maryland conveyance.

2

In reaching our holding in *Muskin*, we examined fully the prohibition against taking away vested rights. 422 Md. at 559–560, 30 A.3d at 971. Prior to Chapter 290, there was no central registry for ground rents in Maryland. *Muskin*, 422 Md. at 551, 30 A.3d at 966. In *Muskin* we were asked to review legislation that would create such a registry. *Id*. Chapter 290 mandated that all ground rent holders submit a form and registration fee to a centralized registry of ground rents by September 30, 2010. *See* Md. Code (1974, 2010 Repl. Vol.), §§ 8-704 and 8-707(a) of the Real Property Article ("RP"). Most importantly, if a ground rent owner failed to register by the deadline "the reversionary interest . . . under the ground lease [would be ] extinguished **and [the] ground rent [would be ] no longer payable**[**.**]" RP § 8-708(a) (emphasis added). Furthermore, "[t]he extinguishment of the ground lease [would be] effective to conclusively vest a fee simple title in the leasehold tenant, free and clear of any and all right, title, or interest of the ground lease holder . . . ." RP § 8-708(c). Chapter 290 was a harsh change, because the extinguishment and transfer provisions "cut off all remedies, while divesting impermissibly the real property and contractual vested rights of ground rent owners." *Muskin*, 422 Md. at 563, 30 A.3d at 973. In short, the asset vanished.

In holding the extinguishment and transfer provisions of Chapter 290 invalid under the Maryland Declaration of Rights and Constitution, we explained:

> A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights cannot be separated one from the other; together they are the essence of this unique property interest,

3

and as such, vested rights analysis must consider them together. *Muskin*, 422 Md. at 559–60, 30 A.3d at 971 (footnote omitted). The Majority interprets this reasoning as a pronouncement that the right of reentry in the event of a default, by itself, is a vested right. Yet, what we dealt with in *Muskin* differs dramatically from the legislation here, and our explanation in *Muskin* must be seen in its proper perspective. There, the challenged legislation abrogated a vested right—it involved a **complete forfeiture** of the historical ground rent holder's interest, merely from a failure to comply timely with a brand new registration requirement.

The retroactive abrogation of a vested right required that we look at all the rights the ground rent holder possessed, and examine them in light of the constitutional standard. *See Muskin*, 422 Md. at 559–60, 30 A.3d at 971. We categorized the rights in the bundle as follows: (1) the property right to a reversion of ownership at the expiration of the lease; (2) the contractual right to receive ground rent payments; and (3) the right to pursue the remedy of reentry in the event of a default. *Id*. It is only by considering them together that their respective roles become apparent. The right to re-take possession at the expiration of the lease maintains the leaseholder's interest in the property, and allows the ground lease to be assigned, devised, or inherited. The contractual right creates the ability for the leaseholder to receive payments. The right of reentry in the event of default allows the leaseholder to enforce performance of the tenant's payment obligation.

At its core, the ground rent creates two inseparable rights: (1) the right to create an

4

obligation tied to the land, and (2) the right to retain an interest in the land to allow for the enforcement of that obligation. Thus, any change in how one of these rights is treated must be analyzed in the context of the property interest as a whole. Under this framework, Chapter 290 was invalid because it abrogated a vested right and destroyed the underlying purpose of the conveyance, which, from the landlord's view, was to secure the payment, in perpetuity, of interest on a sum of money. *See Banks v. Haskie*, 45 Md. 207, 217 (1876). If the ground rent was not registered, even inadvertently, the ground lease holder lost all of its rights. Thus, we held Chapter 290 unconstitutional because it abrogated a vested right.

### *The Right Of Reentry In The Event Of Default Is Not A Vested Right*

In *Muskin*, we did not address the significant difference between the role of the reversion at the end of the lease, and the contingent right of reentry in the event of default because *Muskin* was a case about the Legislature's complete vitiation of the vested end-of-lease term reversion interest upon a failure to register. We had no need to analyze the role of the right of reentry in the event of default with any specificity. Indeed, as we explained, "[e]ven if [the rights in the ground lease] were analyzed separately, to determine one right is vested is to find Chapter 290's extinguishment scheme flawed fatally." *Muskin*, 422 Md. at 560 n.9, 30 A.3d at 971 n.9. This is reflected in our explanation of the abrogated vested rights, wherein we recognized that "[t]here can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law." *Muskin*, 422 Md. at 560, 30 A.3d at 971. Absent from this

5

explanation is any hint or mention of the right of reentry in the event of default. This is because once we determined that a failure to meet Chapter 290's registration requirement could result in abrogation of the vested right to receive ground rents and the reversion at the expiration of the lease, our analysis was complete. This renders any of our discussion of the right of reentry in the event of default as collateral to the underlying holding in *Muskin*.

Conversely, because the case before us implicates the distinction between the reversion and the possibility of reverter, it is necessary to address this distinction. The distinction between the end-of-lease reversion, which Chapter 290 impermissibly abrogated, and the right of reentry in the event of default, which is also referred to as a possibility of reverter,[2] explains why the Legislature is prohibited from abrogating one, but may alter the other. This distinction is best explained as follows:

> Despite its purely historical origin, the distinction between the

---

[2] A preeminent treatise on real property, in discussing "Possibilities of reverter," has explained the contingent nature of the right of reentry upon breach:

> [t]he right of re-entry for breach of a condition, annexed to an estate in fee simple, is sometimes referred to as a possibility of reverter. The expression "revert," however, signifies a return to the grantor of the ownership or possession by operation of law, and is not properly applicable to his reacquisition of the ownership or possession by entry or its equivalent. The right of re-entry in such a case might, consequently, so long as the condition has not been broken, more appropriately be referred to merely as a **contingent right of re-entry.**

2 Herbert T. Tiffany, *The Law of Real Property* § 314 (3d ed. 1939) (emphasis added) (footnote omitted).

reversion and the possibility of reverter is still significant. The latter is generally a less substantial interest (because whether it ever becomes possessory depends upon some contingency) and is therefore accorded less protection.

If an owner in fee simple transfers an estate in fee simple subject to a condition subsequent, the interest he now has is called a right of entry for breach of condition. Here again, the chance that the interest will become possessory depends upon whether there will be a breach of condition, and the interest is thus frequently less substantial than a reversion.

*    *    *

The right of entry which may thus co-exist with a reversion is distinguished from the reversion in that the right of entry involves a power in the owner thereof to terminate the possessory estate or not as he wishes, if the condition is broken. But, in the case of a reversion, a possessory interest revests automatically in the reversioner upon the happening of the event on which the particular estate is to terminate.

1 John A. Borron, *Simes and Smith, The Law of Future Interests* § 92 (Borron 3d ed. 2002) (footnotes omitted). Thus, in a ground lease, the reversion and the right of reentry in the event of default come from the same source and co-exist. Yet, they are legally distinct future interests and are not treated the same under canons of property law. The reversion, because it is possessory, is given strong legal protections from divestment—it is an estate in property. This protection formed the basis of our holding in *Muskin*. The possibility of reverter, because it is not a possessory interest prior to its condition precedent occurring, is not an estate in property.

In this case, the difference between the reversion, which *Muskin* protected, and the

7

right of reentry in the event of default is the difference between a vested right and a contingent right. The Supreme Court has endorsed the following articulation of the difference between an interest in property being vested and being contingent:

> "[R]ights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting."

*Pearsall v. Great Northern Ry. Co.*, 161 U.S. 646, 673, 16 S. Ct. 705, 713 (1896) (quoting Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America* 332 (2d ed. 1891)). Because a tenant's default is an uncertain event, the right of reentry in the event of default is a contingency. If a right or interest is subject to a contingency, it cannot be considered vested in any recognized sense of the word, whether it is "bundled" with other vested rights or not.[3]

---

[3]The Majority makes frequent reference to the "bundle" that is the essence of a ground lease. What the Majority does not address, and *Muskin* does not explain, is why being present in the same contractual instrument and having a related goal **requires** that all conveyed rights be of the same vested character. No other jurisdiction or court has ever referred to the concept of a bundle of vested rights, or has articulated any principle that explains why an otherwise contingent right becomes vested merely because of theoretical proximity to vested rights in a lease contract. As explained above, the right of reentry in the event of default is not what uniquely sets apart the Maryland ground lease from its traditional cousins, and it plays no role beyond its traditional role in leases. Thus, it should not get unique treatment in Maryland simply for being part of the same conveyance as vested rights.

In addition to the Supreme Court, the following states have recognized the distinction between vested rights and contingent rights: Florida, *see Clausell v. Hobart Corp.*, 515 So. 2d 1275, 1276 (Fla. 1987) ("'To be vested a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand.'" (quoting *Div. of Workers' Comp. v. Brevda*, 420 So. 2d 887, 891 (Fla. 1st DCA 1982)); Louisiana, *see Tennant v. Russell*, 214 La. 1046, 1052, 39 So. 2d 726, 728 (La. 1949) ("'The right must be absolute, complete, and unconditional, independent of a contingency, and a mere expectancy of future benefit, or a contingent interest in property . . . does not constitute a vested right.'" (quoting 16 C.J.S. *Constitutional Law* § 215)); Kansas, *see Brown v. City of Topeka*, 146 Kan. 974, 74 P.2d 142, 143 (Kan. 1937) ("a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right."); California, *see Dickey v. Ret. Bd.*, 16 Cal. 3d 745, 548 P.2d 689 (Cal. 1976) (holding that a right does not vest "but upon the happening of the contingency upon which" the right is conditioned); New Hampshire, *see In re Goldman*, 151 N.H. 770, 774, 868 A.2d 278, 282 (N.H. 2005); Pennsylvania, *see Hopkins v. Jones*, 2 Pa. 69 (Pa. 1845); and Iowa, *see Taylor v. Taylor*, 118 Iowa 407, 92 N.W. 71 (Iowa 1902) ("whether a legacy is vested or contingent depends upon the event, and not on the time. If the event is uncertain, the legacy is contingent, though the time is fixed; and, if certain, the legacy is vested, although the time is uncertain.").

9

Here, the Majority relies on *Muskin* alone for the proposition that the right of reentry in the event of default is a vested right held by ground lease owners. In so doing, the Majority confers vested status on a right that simply, analytically, cannot be inherently vested. To say a right is vested means "(a) that there is no *condition precedent* to B's interest becoming a present estate other than the *natural expiration* of A's estate for life, and (b) that it is *theoretically* possible to identify who would get the right to possession if A's estate should end *at any time*." Thomas F. Bergin and Paul G. Haskell, *Preface to Estates in Land and Future Interests*, 71 (1st ed. 1966) (italics in original). Prior to the condition precedent occurring, to speak of the right as vested is to conflate the possible with the necessary. Thus, the right should not receive the heightened protection we extended to vested rights in *Dua* and *Muskin*.

### *The Right Of Reentry Is A Remedy*

I echo Judge Watts' view that the right of reentry is a remedy. The Legislature is allowed to alter the remedies available at law. Although vested rights may not be abrogated,

> [t]here exists, however, an exception to this general prohibition that applies solely to remedies and rules of evidence. We have held consistently that **the Legislature has the power to alter** the rules of evidence and **remedies**, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights.

*Muskin*, 422 Md. at 561, 30 A.3d at 971 (emphasis added). Because the right of reentry is merely a **contingent** right to pursue a given judicial remedy, the Legislature may alter it without running afoul of this Court's aversion to the retrospective abrogation of **vested**

10

property rights. *See* 2 *Sutherland's Statutory Construction* § 674 (2d ed. 1904) ("[n]o person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights.").

Chapter 286 grants ground lease holders a sufficient substitute method of enforcing a tenant's obligation to pay—the lien-and-foreclosure process set forth in RP § 8-402.3. The role of the right of reentry in the event of default is to provide a means for ground lease holders to enforce the tenant's obligation to pay rent. The lien-and-foreclosure process announced by Chapter 286 also effectuates the purpose the Majority ascribes to the right of reentry, allowing the landlord to terminate the leasehold interest and recover rents due.

I disagree with interpreting the ability to retake possession in the event of default as if it were the purpose, or even **a** purpose, of the ground lease. It is not. The ground rent system arose as a means of exchanging long-term home financing for an indefinite stream of payments. *See Banks*, 45 Md. at 218. Additionally, the right of reentry in the event of default was written into ground leases to secure payment, **not** to allow the landlord to retake present possession. *See Wylie v. Kirby*, 115 Md. 282, 287, 80 A. 962, 964 (1911) ("There is nothing in the lease or in the record at large to justify the inference that the condition of forfeiture was intended to serve any other purpose than that of a security for the payment of the rent at the times and in the installments prescribed[.]"); *see also* 1 *Pomeroy's Equity Jurisprudence* § 453 (4th ed. 1918) ("such condition and forfeiture are intended merely as a security for the payment of money."); *and* 3 *Story's Equity Jurisprudence* §1727 (14th ed.

11

1918) ("the right of entry is deemed to be intended to be a mere security for the payment of rent.").

Nothing in Chapter 286 changes the underlying nature of the ground lease agreement. The changes in remedy wrought by Chapter 286 do not detract from use of the ground rent as a vehicle to obtain long-term home financing and secure an income stream. Having the right to take possession and terminate the tenant's right at an earlier date was only a remedy to enforce the tenant's obligation, not an asset in its own right. Thus, that the landlord may not retake present possession under Chapter 286 does not render the substitution of remedies deficient.

The Majority rests its analysis on our holding in *Muskin*, and no other source, for the proposition that by sheer fiat a Court may confer vested status on a property right whose condition precedent has not yet occurred. I do not contest that once the tenant **does** default on his or her payments, then the right of reentry vests. The Legislature does not have the power to abrogate such vested rights. Yet here, the right the Legislature seeks to abrogate is not, by any recognized definition, a vested one. The Legislature is allowed to alter the remedies available at law, and here the new remedy does not deprive the ground lease holder from being made whole in the event of a tenant default, in the manner contemplated by the lease. This makes Chapter 286 a permissible substitution of remedies. Thus the heightened protections contemplated in *Dua* and reiterated in *Muskin* do not apply to the right of reentry

12

in the event of default.  I would reverse the Circuit Court for Anne Arundel County.  Thus,

I most respectfully dissent.

Circuit Court for Anne Arundel County
Case No. 02-C-07-126810
Argued: September 9, 2013

IN THE COURT OF APPEALS

OF MARYLAND

No. 8

September Term, 2013

_____

STATE OF MARYLAND

v.

STANLEY GOLDBERG, ET AL.

_____

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
Watts
Cathell, Dale R. (Retired,
        Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J.

_____

Filed: February 26, 2014

Respectfully, I dissent, and would reverse the circuit court's grant of appellees' motion for summary judgment.

In a matter of first impression, this Court is called upon to directly address the issue of ejectment as a remedy for non-payment of ground rent; and, oddly, this Court determines that the statutorily created remedy of ejectment–contingent on non-payment of rent by the lessee and proper notice by the lessor–is, indeed, a remedy but is "essential for the right of re-entry in Maryland grounds rents[,]" and, thus, Chapter 286 of the 2007 Laws of Maryland is unconstitutional. Majority Slip Op. at 26. So unusual is this conclusion that a detailed and reasoned review of the history of ground rent leases, relevant case law, and applicable statutes in Maryland is warranted.

As early as 1953, in Kolker v. Biggs, 203 Md. 137, 141, 99 A.2d 743, 745 (1953), we discussed the history and complications of ground rent leases in Maryland, explaining:

> Ground rent leases, which were rare in England but common in Ireland, were introduced in Maryland before the Revolution. Seldom used in other States,[1] they have been a favorite form of tenure in Baltimore. In

---

[1] "[G]round rent is found primarily in Maryland and Pennsylvania." Black's Law Dictionary 1323 (8th ed. 2004). The Superior Court of Pennsylvania has described "ground rent," as defined by Pennsylvania law, stating:

In Pennsylvania ground rent is a "perpetual rent reserved to himself and his heirs, by the grantor of land in fee-simple, out of the land conveyed. It is in the nature of an emphyteutic rent. Our Supreme Court . . . has further defined ground rent as: "an incorporeal hereditament . . . an interest in land distinct and separate from the land out of which it issues. . . . A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the

(Continued...)

the ground rent lease, as used in Maryland, the owner of the land in fee simple leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fine, upon the condition that the lessee will pay a certain rent and that if the payment is in default the lessor may reenter and terminate the lease. The lessee also covenants to pay all taxes on the property. The leasehold is considered in the law as personal property, but in practical effect it is real property subject to payment of the ground rent and all taxes on the land and improvements.

ground rent. . . . A ground rent is assignable. . . . Such an assignment passes legal title not only to the right of distress, the power to re-enter, etc., but to all the remedies of whatever description which the grantor had against the grantee. . . ."

Treasure Lake Prop. Owners Ass'n, Inc. v. Meyer, 832 A.2d 477, 482-83 (Pa. Super. Ct. 2003) (citations omitted) (some omissions in original). In Pennsylvania, a ground lease owner has several **remedies** to utilize for nonpayment of ground rent, including: (1) "[a]n action in personam to recover any amount due on a ground rent . . . in accordance with the rules governing a civil action[,]" Pa. R.C.P. 1161(a); (2) "[a]n action in rem to enforce a ground rent . . . in accordance with the rules governing the action of mortgage foreclosure," Pa. R.C.P. 1162(a); (3) the "right to distrain for rent due," Pa. R.C.P. 1163; (4) "the right of entry[,]" Pa. R.C.P. 1163; and (5) "any other remedy provided by law[,]" Pa. R.C.P. 1163.

Although the Majority attempts to distinguish the ground rent system in Pennsylvania from the ground rent system in Maryland, see Majority Slip Op. at 26 n.19, characterizing ground rent in Pennsylvania as "a land conveyance subject to rent payments" and ground rent in Maryland as "a lease subject to condition for rent payments[,]" such a distinction is meaningless. Although there may exist distinctions in taxation between Maryland and Pennsylvania with regard to ground rent, ground rent in both states boils down to a conveyance of an interest in land, whether in fee simple or by lease, subject to rent payments. Compare Kolker, 203 Md. at 141, 99 A.2d at 745 ("In the ground rent lease, as used in Maryland, the owner of the land in fee simple leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fee, upon the condition that the lessee will pay a certain rent[.]"), with Treasure Lake Prop. Owners Ass'n, 832 A.2d at 482-83 ("A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent." (Citation omitted)). This Court has described the ground rent system in Maryland in the same terms as the system in place in Pennsylvania, i.e., the transfer of land subject to payment of ground rent.

Long ago it was found that Maryland's unique system of ground rent leases had resulted in the complication of many legal titles.[2]  Very often the ground rents were small and were not collected for many years, and when the land was subdivided and owned by many persons, it was difficult to obtain clear titles for the properties.

---

[2] In Hawaii, there exists a similar system of "ground leases."  The Supreme Court of Hawaii has discussed the history of ground leases within the state as follows:

> The State legislature has recognized that Hawaii's limited supply of land is controlled to a great extent by a few large landowners.  Some of these fee owners have chosen to lease their property under long-term leases resulting in a shortage of fee simple residential land.  Thus, many people . . . must accept long-term ground leases in order to acquire the land needed to build their homes.  Consequently, long-term ground leases have evolved into sophisticated instruments that grant property rights beyond mere possession.  For example, Hawaii residential leases often include a provision that permits lessees to mortgage and sell their leasehold estates, thereby implicating the interests of third parties when lessees mortgage or transfer their leasehold estates.  In effect, lessees . . . have been granted leasehold title to real property by their lessor, which for commercial and other legal purposes, is similar to fee simple ownership.

Queen Emma Found. v. Tingco, 845 P.2d 1186, 1190 (Haw. 1992) (citations and footnote omitted), reconsideration denied, 849 P.2d 81 (Haw. 1993).  In Tingco, 845 P.2d at 1191, the Supreme Court of Hawaii held "that long-term residential ground leases . . . cannot be cancelled or forfeited in a district court summary possession action[,]" a statutory proceeding that enabled a ground lease landlord to regain possession of the property and remove a tenant who is wrongfully in possession, because "the only court that may take cognizance of actions seeking the cancellation or forfeiture of [ground] leases is the circuit court."  The Supreme Court of Hawaii recognized that the "lessee's interests are of limited duration and require the payment of rent to the leased fee owner[,]" id. at 1190 n.10, but determined that because a lessee's leasehold estate may be readily mortgaged, condemned, or assigned, and because "title to real estate is in question[,]" "a lessor seeking to dispossess a long-term lessee must file his complaint in the circuit court[.]" Id. at 1190.

In Hawaii, as in Maryland, a lessor seeking satisfaction for non-payment of rent is required to file a complaint in the circuit court–i.e., there is no automatic right to dispossess due to non-payment of rent.

(Citations omitted).  See also Heritage Realty, Inc. v. Baltimore, 252 Md. 1, 3-6, 248 A.2d 898, 899-901 (1969) (discussing the development of ground rent law in Maryland).

Historically, ground lease owners in Maryland had three remedies for the nonpayment of ground rent: (1) distraint, see Heritage Realty, 252 Md. at 3, 248 A.2d at 900 ("Since the [ground] rent was categorized as a rent service, the remedy of distraint was available to the lessor."  (Citation omitted))[3]; (2) a civil action for a monetary judgment in the amount of the past due ground rent, see Md. Code Ann., Real Prop. Art. (1974, 2003 Repl. Vol.) ("R.P.") § 8-402.2(c)(2); and (3) prior to the enactment of Chapter 286, ejectment, which was governed by R.P. § 8-402.2(a) and authorized an action for possession of the property pursuant to R.P. § 14-108.1.  Under R.P. § 8-402.2(a) and R.P. § 14-108.1, if a ground lease owner was successful in ejecting a ground lease tenant, the ground lease owner, who already possessed title to the land subjected to ground rent, also obtained title to the house on the land.

In December 2006, *The Baltimore Sun* published a thorough three-part series of articles highlighting the abuses of the ejectment remedy as used against ground lease tenants.  In the first article, *The Baltimore Sun* reported:

> Baltimore's arcane system of ground rents, widely viewed as a harmless vestige of colonial law, is increasingly being used by some investors to seize homes or extract large fees from people who often are ignorant of the loosely regulated process, an investigation by The Sun has found.

---

[3]Black's Law Dictionary defines "distrain" as follows: "To force (a person, usu. a tenant), by the seizure and detention of personal property, to perform an obligation (such as paying overdue rent)."  Black's Law Dictionary 508 (8th ed. 2004).

Tens of thousands of Baltimore homeowners must pay rent twice a year on the land under their houses. If they fall behind on the payments, the ground rent holders can sue to seize the houses – and have done so nearly 4,000 times in the past six years, sometimes over back rent as little as $24, The Sun found.

Fred Schulte and June Arney, *On shaky ground*, THE BALTIMORE SUN, Dec. 10, 2006, available at http://www.baltimoresun.com/business/real-estate/bal-groundrent1-12102006,0,2042038.story (last visited January 30, 2014). The article stated that its investigation revealed the following:

No other private debt collectors in Maryland can obtain rewards so disproportionate to what they are owed. In contrast [to] a foreclosure, the holder of an overdue ground rent can seize a home, sell it[,] and keep every cent of the proceeds. To prevent seizure, homeowners almost always have to pay fees that dwarf the amount of rent they owe.

Id.

In response to the outrage generated by what was seen as abuses of the ejectment remedy by ground lease owners, as well as other problems with the ground rent system, State legislators proposed amendments to the ground rent statutes. See Fred Schulte and June Arney, *Bills to tackle ground rents*, THE BALTIMORE SUN, Dec. 13, 2006, available at http://articles.baltimoresun.com/2006-12-13/news/0612130289_1_ground-rent (last visited January 30, 2014). One of those amendments–Chapter 286, concerning remedies for nonpayment of ground rent–was subsequently enacted. Chapter 286 was designed to eliminate the remedy of ejectment for non-payment of ground rent. The purpose of Chapter 286 was stated as follows:

FOR the purpose of applying provisions of law authorizing a landlord under a ground lease to bring an action for ejectment for nonpayment of ground rent to certain property; repealing provisions of law

entitling the holder of a ground rent to reimbursement for certain expenses incurred in collecting past due ground rent and filing an action for ejectment; providing that the establishment of a lien is the remedy for nonpayment of a ground rent on certain residential property; requiring a certain person seeking to impose a lien to give a certain notice to certain persons in a certain manner; . . . providing for the enforcement and foreclosure of a lien; . . . providing that certain provisions of law authorizing a certain action for possession do not apply to certain actions for nonpayment of ground rent; . . . and generally relating to remedies for nonpayment of ground rent.

As enacted, R.P. (1974, 2010 Repl. Vol.) § 8-402.3(c), applicable to residential property, eliminates the remedy of ejectment and now provides the following remedies to ground lease owners for nonpayment of ground rent:

(1) Notwithstanding any provision of a ground lease giving the ground lease holder the right to reenter, the establishment of a lien under this section is the remedy for nonpayment of a ground rent.

(2) This section does not affect the right of a ground lease holder to bring a civil action against the leasehold tenant seeking a money judgment for the amount of the past due ground rent.[4]

---

[4]Of note, the prohibition against ejectment was limited to "residential property that is or was used, intended to be used, or authorized to be used for four or fewer dwelling units[,]" R.P. §§ 8-402.3(b)(1), 8-402.2(a)(2); *i.e.*, ejectment remains a remedy that can be employed by ground lease owners for nonpayment of ground rent where the property is:

      (i) Leased for business, commercial, manufacturing, mercantile, or industrial purposes, or any other purpose that is not primarily residential;
      (ii) Improved or to be improved by any apartment, condominium, cooperative, or other building for multifamily use of greater than four dwelling units; or
      (iii) Leased for dwellings or mobile homes that are erected or placed in a mobile home development or mobile home park.

R.P. §§ 8-402.3(b)(2), 8-402.2(a)(1).

The amendments to the ground rent statutes, including Chapter 286, did not change the ground lease owner's ability to bring a civil action against a tenant for a money judgment in the amount of the past due ground rent, see R.P. § 8-402.3(c)(2), nor did the amendments alter the ground lease owner's reversionary interest if the leaseholder fails to renew, see R.P. § 8-402.3(a)(3)(i) (defining a "Ground lease holder" as "the holder of the reversionary interest under a ground lease").

Passage of the amendments to the ground rent statutes met with immediate challenges. In Muskin v. State Dep't of Assessments & Taxation, 422 Md. 544, 549-50, 30 A.3d 962, 965 (2011), we addressed a challenge to the constitutionality of one of the amendments–Chapter 290, the Ground Rent Registry Statute–which required the State Department of Assessments and Taxation ("SDAT") to maintain an online registry of ground rent leases. Under Chapter 290, if a ground lease holder failed to register the property with SDAT by the statutory deadline, SDAT was authorized to issue an extinguishment certificate transferring the reversionary interest from the ground lease holder to the ground rent tenant.

To understand the issue currently before this Court, it is important to recognize what was not before the Court in Muskin–i.e., in Muskin, we did not address the issue of ejectment as a remedy for non-payment of ground rent. In Muskin, the issue squarely before the Court was the propriety of extinguishment of a ground rent lease as a consequence for the failure to register the lease pursuant to Chapter 290. No one in Muskin failed to pay ground rent, and no one was subject to ejectment. Indeed, Chapter

290 did not purport to address or regulate in any manner the act of ejectment as a remedy for non-payment of ground rent.

In Muskin, 422 Md. at 550, 30 A.3d at 965, with the Honorable Glenn T. Harrell, Jr. writing for this Court, we held that the extinguishment and transfer provisions of Chapter 290 were invalid because they violated "specific prohibitions on the retrospective application of statutes that lead to the abrogation of vested rights and the taking of property without just compensation[,]" but held that the registration requirement was valid. We explained Maryland's constitutional protections for vested rights, stating: "Together, Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights." Muskin, id. at 555, 30 A.3d at 968 (citation omitted). Quoting Dua v. Comcast Cable of Md. Inc., 370 Md. 604, 623, 805 A.2d 1061, 1072 (2002), we stated:

> [I]t has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how "rational" under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking of a person's property and giving it to someone else.

Muskin, 422 Md. at 556-57, 30 A.3d at 969.

In assessing the constitutionality of Chapter 290, we addressed "whether the statute [operated] retrospectively and abrogate[d] a vested right or [took] property without just compensation." Id. at 557, 30 A.3d at 969. Applying the analysis of the Supreme Court of the United States in Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994), we held that Chapter 290 was a retrospective statute because it "impact[ed] impermissibly the reasonable reliance and settled expectations of ground rent owners by

- 8 -

virtue of its extinguishment and transfer features as the consequences for non-registration (or untimely registration) of ground rents." Muskin, 422 Md. at 558, 30 A.3d at 970.

As to whether Chapter 290 as a retrospective statute impermissibly abrogated vested rights, we stated:

> **A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights** cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider them together. As pointed out by the SDAT, there is no Maryland case on point that has held that the rights created under a ground lease are vested rights. Courts have struggled with the difficulty of determining a precise definition of vested rights.
>
> . . . **There can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law.** *Heritage Realty*, 252 Md. at 11, 248 A.2d at 904 (recognizing the importance of the reversionary interest, stating that "[t]he owner [of the reversionary interest] is entitled to receive fair market value on condemnation").

Muskin, 422 Md. at 559-60, 30 A.3d at 971 (footnotes and one citation omitted) (alterations, omission, and some emphasis in original). Accordingly, we held "that the extinguishment and transfer provisions of Chapter 290 [were] unconstitutional" because the statute was retrospective and abrogated vested property rights. Id. at 560, 30 A.3d at 971.

Most significantly, however, in Muskin, id. at 561, 30 A.3d at 971, we held that an exception to the general prohibition against statutes that abrogate vested rights exists in circumstances where the statute "applies solely to remedies and rules of evidence." We explained:

- 9 -

> We have held consistently that the Legislature has the power to alter the rules of evidence and remedies, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights. *Thistle v. Frostburg Coal Co.*, 10 Md. 129, 145 (1856) (holding that the Legislature has the power to alter and remodel the rules of evidence and remedies); *Wilson v. Simon*, 91 Md. 1, 6, 45 A. 1022, 1023 (1900) (holding that the Legislature may abrogate retrospectively a property or contract right if there are other remedies available); *Allen v. Dovell*, 193 Md. 359, 363-64, 66 A.2d 795, 797 (1949) (holding that the Legislature has the power to amend statutes of limitations so long as there is a reasonable time for enforcement of a cause of action); *Langston [v. Riffe]*, 359 Md. [396,] 407, 754 A.2d [389,] 394 [(2000)] (holding valid statutes that altered only the procedures involved in enforcing rights or remedies available for enforcement); *but see Prince George's Cnty. v. Longtin*, 419 Md. 450, 19 A.3d 859 (2011), where the court refused to give retrospective application of a statutory damages "cap" to a previously accrued cause of action.

Muskin, 422 Md. at 561, 30 A.3d at 971-72. We distinguished the vested rights at issue in the case–the extinguishment and transfer of the ownership interest in a ground rent lease–from remedies and evidence rules, and stated that the exception does not apply where the statute eliminates all remedies or "divests a right through instrumentality of the remedy, and under the preten[s]e of regulating it[.]" Id. at 562-63, 30 A.3d at 972-73 (citations omitted) (first alteration in original). Indeed, we determined that Chapter 290 "purport[ed] to regulate vested rights, but in effect remove[d] all remedies and extinguishe[d] those rights completely." Id. at 563, 30 A.3d at 973. As such, in Muskin, id. at 563, 30 A.3d at 973, we held that the extinguishment and transfer provisions of Chapter 290 impermissibly divested ground rent owners of their real property and contractual vested rights.

Turning to the issue before this Court in this case–the constitutionality of the substitution of lien and foreclosure proceedings for the remedy of ejectment as a

consequence for non-payment of ground rent–as in <u>Muskin</u>, I would begin the analysis by first addressing whether Chapter 286 operates retrospectively. As previously stated, this Court has adopted the <u>Landgraf</u> analysis, by which we evaluate a statute for "'fair notice, reasonable reliance, and settled expectations' to determine 'the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.'" <u>Muskin</u>, 422 Md. at 557-58, 30 A.3d at 969-70. Applying that analysis to Chapter 286 leads to the conclusion that Chapter 286 is a retrospective statute because it impacts the reasonable reliance and settled expectations of ground lease owners by substituting one remedy (ejectment) with another remedy (lien and foreclosure) in circumstances involving residential property.

Nonetheless, I would hold that Chapter 286's status as a retrospective statute is of no consequence because Chapter 286 does not impermissibly abrogate ground lease owners' vested rights.

To begin, it is undisputed that <u>Muskin</u> did not address the issue of ejectment as a remedy for nonpayment of ground rent. In <u>Muskin</u>, this Court simply was not confronted with the issue of whether the remedy or action of ejectment was a vested right held by ground lease owners or was indispensable to the right of re-entry. Instead, as discussed above, the sole question in <u>Muskin</u> was whether extinguishment of the entire ground lease and transfer of title to the ground lease tenant for the ground lease owner's failure to register by the statutory deadline was unconstitutional. At one point, however, in <u>Muskin</u>, in unexplained *dicta*, we discussed the reversionary interest to re-enter the property if the leaseholder failed to renew as synonymous with the ability to re-enter to

- 11 -

eject the ground lease tenant in the event of a default, and lumped both together as being a "right" held by a ground lease owner. See 422 Md. at 559, 30 A.3d at 971 ("A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and **the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew**." (Emphasis added)). In Muskin, though, despite the instant Majority opinion, it is evident that the reversionary interest if the leaseholder fails to renew the lease is the vested right, not the action or remedy of re-entering the property upon default. See id. at 560, 30 A.3d at 971 ("There can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law."). In Muskin, we did not hold that the right of re-entry was a vested right, nor did we need to consider any issue of ejectment, as the issue was not before this Court at that time. All that can be clearly gleaned from Muskin is that the contractual right to receive ground rent and the **reversionary interest if the leaseholder fails to renew**–not re-entering upon default–are vested rights that cannot be impermissibly abrogated by a retrospective statute.

There is no dispute that the reversionary interest in property–where the leaseholder fails to renew at the end of the lease–and re-entering the property in the event of default are distinct. The former is an interest held by the ground lease owner to be exercised automatically upon the termination of the ground lease rent by operation of law, *i.e.*, no court involvement or notice is required. By contrast, re-entering the property in the event of default, via ejectment, is a statutory remedy for nonpayment of ground rent that

- 12 -

permits a ground lease owner to bring an action for possession of the property after certain notice is provided to the ground lease tenant, and a ground lease owner obtains a judgment through the trial court to eject the ground lease tenant from the property. The Majority does not dispute that ejectment is a remedy, not part of the reversionary interest.[5] See Majority Slip Op. at 23-24, 26. Indeed, the Majority states that the right of

---

[5]The Majority takes pains to distinguish between a possibility of reverter and a right of entry. See Majority Slip Op. at 20-21. In so doing, the Majority cites Arthur E. Selnick Assocs., Inc. v, Howard Cnty., 206 Md. App. 667, 695-96, 51 A.3d 76, 93, cert. denied, 425 Md. 529, 56 A.3d 1241 (2012), in which the Court of Special Appeals described the distinctions between a possibility of reverter and a right of entry as follows:

> In a fee simple determinable estate, where land is devised for a certain purpose, and it is the testator's intention that it shall be used for that purpose only, and that on the cessation of such use, the estate shall end without re-entry by the grantor, a possibility of reverter arises. . . . In a fee simple determinable estate, when the estate is determined, a fee simple absolute estate [is] reestablished in those entitled under the original grantors. It [is] not necessary . . . to assert a claim to the fee simple absolute estate or to take any other positive action, as the grantors acquire[] a fee simple absolute estate by the realization of the possibility of reverter.
>
> In a fee simple subject to a condition subsequent estate, [t]he failure of a condition subsequent . . . merely gives rise to a right of entry; the grantor does not obtain a fee simple absolute [estate] until he or she enters and retakes the land. Thus, in a fee simple determinable estate, the grantor's interest vests in fee simple absolute instantaneously with the failure of the limitation; however, in a fee simple subject to a condition subsequent estate, the grantor must affirmatively exercise his or her right of reentry after the failure of the condition subsequent to obtain title in fee simple absolute.

(Omissions and alterations in original) (citations and internal quotation marks omitted). The Majority also cites The Knights & Ladies of Samaria v. Bd. of Educ. Of Charles Cnty., 113 Md. App. 656, 665 n.4, 688 A.2d 933, 937 n.4 (1997), in which the Court of Special Appeals emphasized the "sharp distinction" that exists between the possibility of reverter and the right of entry, explaining:
(Continued...)

- 13 -

re-entry, not the reversionary interest, is the "right to pursue a provided remedy, such as ejectment[.]" Majority Slip Op. at 23.

That said, I completely disagree with the Majority's characterization of the right of re-entry as "vested." See Majority Slip Op. at 26-27. A thing does not become a vested right under the law simply because we label it as such. The Majority fails to cite any case law or to provide any support for the proposition that the right of re-entry is a vested right. Instead, as explained by the Honorable Sally D. Adkins in her dissenting opinion, Maryland case law leads to the determination that the right of re-entry is, at best, a contingent right.[6] See Dissent Slip Op. at 1. Indeed, the Majority concedes as much: "This right of re-entry is not a reversion, a possibility of reversion, or an estate in land, but is a mere right or chose in action – a right or power to terminate the estate of the grantee and retake the same if there is a breach of condition – and if it is enforced, the grantor would be in by the failure of the condition and not by a reverter." Majority Slip Op. at 23 (quoting 16 A.L.R.2d 1246). As conceded by the Majority, a review of the

_____

> [T]he failure of a special limitation, such as a possibility of reverter, results automatically in the reversion of an estate to the original grantor in fee simple absolute without the need for entry. The failure of a condition subsequent, however, merely gives rise to a right of entry; the grantor does not obtain a fee simple absolute until he or she enters and retakes the land.

(Citations omitted). These cases support the very proposition at the heart of the matter– that the reversionary interest if the leaseholder fails to renew is distinct from re-entering the property upon default, via ejectment.

[6]Assuming as the Majority contends that there exists a separate right of re-entry provided by a source other than the statutory ejectment process, the right is at most contingent. See Majority Slip Op. at 23-25.

- 14 -

history of ground rent leases in Maryland leads to the inescapable conclusion that right of re-entry (re-entering upon default) is distinct from the reversionary interest (where the leaseholder fails to renew); and, prior to the enactment of Chapter 286, the right of re-entry involved ejectment–a remedy created by the General Assembly and now replaced by the General Assembly with the remedy of lien and foreclosure.

In sum, in Muskin, although we stated that a ground rent lease creates a "bundle of vested rights" for the ground rent owner–specifically, "a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew"–we never held that the right of re-entry is a vested right or that a specific remedy, such as ejectment, is a part of a bundle of vested rights. Muskin, 422 Md. at 559, 30 A.3d at 971. It is not dispositive that, in Muskin, we used the term "reversionary interest" upon the failure of a leaseholder to renew interchangeably with the term right to "re-enter upon default," as the use of the terms was done without any analysis into the distinction that exists. Indeed, the *dicta* in Muskin, id. at 559, 30 A.3d at 971–that a ground rent lease creates "the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew"– demonstrates that this Court, as the Majority now implicitly recognizes, utilized unintended language, failing to differentiate between two very distinct matters, and instead referred to both as the same. Stated otherwise, in Muskin, we improperly considered the right of re-entry on default to be the same as the reversionary interest if the leaseholder fails to renew, and mistakenly labeled both as a part of a bundle of vested rights.

The Majority concedes that the right of re-entry is not the same as the reversionary right–*i.e.*, the Majority acknowledges that the right of re-entry upon default is distinct from the reversionary interest if the leaseholder fails to renew–see Majority Slip Op. at 23 ("This right of re-entry is not a reversion, a possibility of reverter, or an estate in land, but is a mere . . . right or power to terminate the estate of the grantee and retake the same if there is a breach of condition[.]"  (Quoting 16 A.L.R.2d 1246))–but nonetheless insists the right of re-entry is "vested."    This insistence is, however, of no significance.  Even if Muskin could possibly be stretched to be interpreted as holding that the right of re-entry is a vested right, I would hold, nonetheless, that Chapter 286 does not impermissibly abrogate ground lease owners' vested rights.  Chapter 286, by substituting the remedy of ejectment with the remedy of lien and foreclosure, does not run afoul of the prohibition against statutes that abrogate vested rights.  In Muskin, 422 Md. at 561, 30 A.3d at 971, we explicitly stated that an exception to the general prohibition against statutes that abrogate vested rights exists in circumstances where the statute "applies solely to remedies and rules of evidence."

In identifying this exception, we examined a case relevant to the instant case– Wilson v. Simon, 91 Md. 1, 45 A. 1022 (1900).  In Wilson, id. at 4, 45 A. at 1022, while a suit to enforce a mechanic's lien for materials was pending, the General Assembly repealed all sections of a particular article of the Code of Maryland that provided for liens for materials furnished for the construction of buildings, and enacted statutes providing only for liens for the payment of debts contracted for work.  In considering whether the changes by the General Assembly deprived Wilson of a vested right to enforce a

- 16 -

mechanic's lien for materials, we rejected several other jurisdictions' interpretations that

a mechanic's lien is a vested right, stating:

> This peculiar lien does not originate in contact. It is purely a creature of positive statutory enactment, to be maintained and enforced to the extent and in the mode which the statute prescribes[.] . . . Nor is it an exact statement of the law that a party, as an incident of his agreement, has a right to all the remedies for the enforcement of the contract in force at the time it was entered into. A party has no right to a particular remedy. . . . [U]ndoubtedly a state may regulate at pleasure the modes of proceedings in its courts. And although the new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract.

Id. at 6-7, 45 A. at 1023 (internal quotation marks and citations omitted). In Wilson, id.

at 7, 45 A. at 1023, we held that the General Assembly could abrogate retrospectively a

property or contract right if there are other remedies available, and observed that

Wilson's "right to bring his action, secure judgment and execution, and make sale of [the

other]'s property remained unimpaired." As such, we held: "[T]he effect of the repealing

statute was not to impair any of the obligations of [Wilson]'s contract, though it took

from him the lien theretofore given him; and that the right to a mechanic's lien for

materials furnished under the law of this state is not a vested right, but an extraordinary

remedy only, which the state may discontinue at pleasure." Id. at 9, 45 A. at 1024.

Here, as in Wilson, it is clear that Chapter 286, far from eliminating all remedies

available to ground lease owners, simply substitutes one remedy (ejectment)–of several

available remedies–with another adequate remedy (lien and foreclosure). Chapter 286

does not divest ground lease owners' vested rights through substitution of remedies, nor

does it remove all remedies or extinguish or mangle the vested rights beyond recognition. Under Chapter 286, ground lease owners retain the vested contractual right to receive ground rent payments and the vested property right or reversionary interest if the leaseholder fails to renew. The ground lease owner now simply cannot summarily eject a ground rent tenant of residential property and take ownership of all of the tenant's improvements on the property. Rather, the ground lease owner must obtain a lien and foreclose upon that lien. Such a procedure ensures that the ground lease tenant is provided with adequate notice, as well as procedural safeguards, and ensures that the ground lease owner obtains the past due ground rent–either from the ground lease tenant upon payment of the established lien and associated costs, or from the purchaser of the ground lease at the foreclosure sale. Aside from ground lease owners preferring a quicker remedy, I fail to discern how lien and foreclosure is any less effective or less adequate a remedy than ejectment at securing the ground lease owners' future enjoyment of ground rent income.

The reasons the Majority provides in holding that the lien and foreclosure remedy does not provide the same safeguards for ground lease owners as ejectment are deficient. The Majority charges that, under lien and foreclosure, a "ground leaseholder is not able . . . to terminate the lease such that he could regain the right to present possession of the property." Majority Slip Op. at 24. To begin, the lien and foreclosure remedy was intended to curb abuses in the ejectment system–namely, ground lease owners obtaining title to the improvements on land, such as houses, for a small fraction of past due ground rent and with bare minimum notice. In Baltimore City, for example, it would be a rare

- 18 -

piece of land subject to ground rent that did not have a house on it. As recognized by the General Assembly, permitting ejectment to continue as a remedy may result in a windfall for the lessor upon the lessee's default. Stated otherwise, the lien and foreclosure remedy provides safeguards to ground lease tenants–something that was lacking under the ejectment remedy. Moreover, the Majority's statement is simply inaccurate. Under the lien and foreclosure remedy as provided in R.P. § 8-402.3, a ground lease owner can establish a lien in the amount of ground rent due and then enforce that lien through a foreclosure sale. There is nothing in R.P. § 8-402.3 that prohibits the ground lease owner, like any other mortgagee, from bidding at the foreclosure sale and purchasing the property.[7]

Next, the Majority claims that replacing the remedy of ejectment with the remedy of lien and foreclosure "changes the very essence of [ground lease] transactions in this State from a lease subject to rent into a conveyance subject to rent[.]" Majority Slip Op.

---

[7]If the ground rent is redeemable–*i.e.*, a ground rent created after April 8, 1884, that provides the leasehold tenant the right to redeem the ground lease, see R.P. § 8-110.1(a)(8); R.P. § 8-110(f); Frank A. Kaufman, The Maryland Ground Rent–Mysterious But Beneficial, 5 Md. L. Rev. 1, 20 (1940)–the foreclosure purchaser "take[s] title to the property free and clear of the ground lease[.]" R.P. § 8-402.3(n)(3)(i). If the ground rent is irredeemable–*i.e.*, "a ground rent created under a ground lease executed before April 9, 1884, that does not contain a provision allowing the leasehold tenant to redeem the ground rent[,]" R.P. § 8-110.1(1)(5)–the foreclosure purchaser "take[s] title to the property subject to the ground lease." R.P. § 8-402.3(n)(3)(ii). Hence, for irredeemable ground leases, the ground lease owner is not in danger of losing possession of the ground lease, and may also purchase improvements on the property. For redeemable ground leases, the ground lease owner's ownership interest was subject to redemption pursuant to the terms of the lease; under the new statute, a redemption amount is paid to the ground lease owner from the foreclosure sale proceeds. See R.P. § 8-402.3(n)(3)(i). Thus, the Majority's point is inaccurate.

- 19 -

at 26.  As discussed above at footnote 1, the distinction between labeling ground rent as a lease subject to rent versus a conveyance subject to rent is of no significance, as, in either circumstance, land is conveyed by the grantor to the grantee–by lease for 99 years renewable "from time to time forever[,]" Kolker, 203 Md. at 141, 99 A.2d at 745, or by fee simple absolute–subject to the payment of ground rent.  The lease period, by definition, is longer than the average person's lifetime, and, in the past, in some instances, it was "next to impossible to find [] information" to track down a ground rent owner.  See supra Fred Schulte and June Arney, *On shaky ground*.  Finally, the Majority contends that the lien and foreclosure remedy is ineffective because the right of re-entry is a "vested" right.  See Majority Slip Op. at 26-27.  Aside from using circular logic, dependent on its holding that the right of re-entry is vested, the Majority also repeatedly implies that a right of re-entry is a lesser right than the reversionary interest, and acknowledges the right is subject to enforcement only upon the failure to pay ground rent.

For the above reasons, I would reverse the circuit court's grant of appellees' motion for summary judgment.  As the Honorable Sally D. Adkins stated in Muskin in dissent–that this Court should "not strike down the legislature's enactment of Chapter 290, which is a legitimate, rational law designed to regulate the ground lease system[,]" 422 Md. at 568, 30 A.3d at 976 (Adkins, J., dissenting) (footnote omitted)–I would state the same about Chapter 286, and would hold that Chapter 286 is constitutional and does not impermissibly abrogate ground lease owners' vested rights.